PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.

(Circuit Court, S. D. New York. April 9, 1910.)

Nos. 2—9, 2—33, 2—149, 3—37.

STREET RAILROADS (§ 58*)—RECEIVERS—PETITION FOR INSTRUCTIONS TO RE-CEIVERS.

A petition for instructions to the receivers for an extensive street railway system by the lessor of one of the constituent lines, not filed until a few weeks prior to the date of the advertised sale of the property, considered and denied.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 135; Dec. Dig. § 58.*]

In Equity. Suits by the Pennsylvania Steel Company and another against the New York City Railway Company and others, by the Morton Trust Company against the Metropolitan Street Railway Company and others, by the Guaranty Trust Company of New York against the Metropolitan Street Railway Company and others, and by the Morton Trust Company against the Metropolitan Street Railway Company and others. On petition by the Twenty-Third Street Railway Company for instructions to receivers. Petition denied.

Byrne & Cutcheon, for Pennsylvania Steel Co.
Jas. L. Quackenbush, for New York City Ry. Co.
Dexter, Osborn & Fleming, for receiver of New York City Ry. Co.
Bronson Winthrop, for Morton Trust Co.
J. Parker Kirlin, for Metropolitan St. Ry. Co.
Masten & Nichols, for receivers of Metropolitan St. Ry. Co.
Davies, Stone & Auerbach, for Guaranty Trust Co.
Parker, Hatch & Sheehan, for Twenty-Third St. Ry. Co.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LACOMBE, Circuit Judge. This is a petition by the Twenty-Third Street Railway Company, asking that certain instructions be given to receivers of the Metropolitan Street Railway Company. Petitioner's road was leased to the Houston, West Street & Pavonia Ferry Railroad Company (which was subsequently merged with other corporations into the Metropolitan) on April 25, 1893. The lease provided that lessee should pay all taxes, assessments, water rents, and charges which might be lawfully imposed on the demised property, and also an annual rental of 18 per cent. on the par value of petitioner's stock. It further provided that, in the event of betterments being made on the railroad or a change of motive power effected, the expenditure therefor should be paid in the first instance by the lessee, and the lessor should execute and deliver to the lessee negotiable bonds in the usual form for the amounts of such expenditure; also that the principal and interest thereof shall be included among the obligations which the lessee should provide for and pay. Since September, 1907, the road has been operated by the receivers, who have regularly paid the rental of 18 per cent.

Referring to the petition, we find that it asks instructions to be given in three particulars, which may be separately considered and disposed of:

(1) That defendants pay from the funds now in their hands the special franchise taxes due upon petitioner's property.

This whole matter of special franchise tax was considered a few weeks ago, and disposed of in the manner indicated in opinion filed February 18, 1910. 176 Fed. 471. There is no good reason for discriminating in favor of petitioner.

(2) That the surplus earnings from the operation of petitioner's road by receivers be applied to the payment of the interest on a note and certain bonds, or impounded and reserved to make such payments.

The note is the one which was referred to in the opinion recently filed in Twenty-Third Street Railway Co. v. Metropolitan Street Railway Co. and Mercantile Trust Co. (March 21, 1910) 177 Fed. 477. The bonds apparently were executed and delivered under the provisions for expenditures for betterments above quoted. Petitioner has a suit pending to cancel these bonds.

Receivers dispute the proposition that there were surplus earnings from the operation of petitioner's roads during the period of receivership. The fact can only be determined upon an accounting, and it does not seem that such accounting should be now ordered. Within five weeks the property covered by the first mortgage, substantially the entire system, will be sold under foreclosure, and it may fairly be assumed that foreclosure sale under the second mortgage of the parcels of real estate and various items of personal property not covered by the first mortgage will follow not long afterwards. Then the final accounting of all interests will be taken up and pushed to a conclusion. It is difficult to see how any prejudice can result to complainant from waiting until that time. The questions as to income and expenditure on any fragment of this intricate system are so complicated that, if the master should begin investigating the statistics of the Twenty-Third Street line to-morrow, all the property would be

out of the hands of the court long before any substantial progress could possibly be made in such investigation. Moreover, this court and the Circuit Court of Appeals have so provided in the decree of foreclosure for cash deposits and reserved liens that there will be ample security for the payment of any sums which upon final accounting it may be held the receivers should have paid or should pay.

(3) That receivers keep separate accounts of the earnings and operating expenses of petitioner's railroad.

This matter of separate accounts, more detailed and specific than those which have always been kept, has been several times considered. It is sufficient to refer to opinions on Petition of Eighth Ave. and Ninth Ave. Companies (C. C.) 165 Fed. 468, and Guaranty Trust Co. v. Metropolitan Street Railway Co. (C. C.) 171 Fed. 1015. Had the present application been made sooner, the court would have disposed of it, by inviting the proposal of modifications in the present method. This was done in the case of Eighth Avenue and Ninth Avenue roads; but no specific proposed modifications were ever submitted. Now, however, when application is made, after operation of the road by receivers has continued for two years and a half, the court is not inclined to direct them to change their whole system of bookkeeping for the few weeks, or possibly months, during which their operation may continue.

Petition denied.